**In the United States District Court
for the District of Kansas**

———————

Case No. 25-cv-2140-TC-BGS

———————

CULTURED NATURAL THIN VENEER STONE, LLC,

*Plaintiff*

v.

CHICAGO, ST. PAUL AND KANSAS CITY
RAILWAY COMPANY, ET AL.,

*Defendants*

———————

**MEMORANDUM AND ORDER**

Cultured Natural Thin Veneer Stone, LLC, filed this action to quiet title against various defendants in Kansas state court. Doc. 1-1. Union Pacific Railroad Company removed the case to federal court, asserting that the claims were completely preempted by federal law, and it moved to dismiss, arguing that Cultured has not stated a claim under federal law. Doc. 8. The motion to dismiss is granted but Cultured is granted leave to amend its Complaint.

**I**

**A**

To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations

1

and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Ass'n. of African Am.-Owned Media*, 589 U.S. 327, 332 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**B**

Cultured brings a claim of adverse possession arising under Kansas state law. The Complaint alleges that Cultured owns property in Wyandotte County, Kansas, and that—through adverse possession—it has become the owner a plot of land across the street from its property. Doc. 1-1 at ¶ 2.[1] The plot in question was deeded to defendant Chicago, St. Paul and Kansas City Railway Company in 1888. *Id.* at ¶ 3. It ultimately ended up in the hands of defendant Union Pacific Railroad Company. *Id.* at ¶ 5–7. Union Pacific is the only entity with a recorded property interest in the plot. *Id.* at ¶ 13.

Union Pacific removed the case to federal court. Doc. 1. It argues that Cultured's claim is completely preempted by the Interstate Commerce Commission Termination Act (ICCTA), 49 U.S.C. §§ 10101–

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF.

11908. *Id.* at ¶ 2. And it moves to dismiss, arguing that Cultured has not stated a claim under the ICCTA. Doc. 8.

## II

Cultured's claim is completely preempted. But it is unclear whether Cultured has or can state a claim under federal law. Accordingly, Union Pacific's motion to dismiss is granted, but Cultured will be given leave to amend.

## A

A preliminary question is whether the District of Kansas has subject-matter jurisdiction. Article III confines the federal judicial power to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Congress may and has further narrowed federal courts' subject-matter jurisdiction. *See Sheldon v. Sill*, 49 U.S. 441, 449 (1850). The party invoking federal jurisdiction "has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014). A court that lacks jurisdiction "cannot render judgment." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018) (quotation marks omitted).

Congress has given federal courts original jurisdiction to hear cases "arising under" federal law. 28 U.S.C. § 1331. Pursuant to Section 1331, "the federal question must appear on the face of a well-pleaded complaint and may not enter in anticipation of a defense." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 494 (1983). But one exception to the well-pleaded complaint rule is when state-law claims are completely preempted by federal law. *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203–04 (10th Cir. 2012). Complete preemption applies when "the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). When this happens, the state-law cause of action becomes a creature of federal law. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983). Thus, "a complaint alleging only a state law cause of action may be removed to federal court on the theory that federal preemption makes the state law claim necessarily federal in character." *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996) (quotation marks omitted).

To determine whether a state-law claim is completely preempted by federal law, a two-step analysis applies. First, a federal court asks "whether the federal question at issue preempts the state law relied on by the plaintiff." *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1256 (10th Cir. 2022). Second, a court asks "whether Congress intended to allow removal in such a case, as manifested by the provision of a federal cause of action." *Id.* Because the first prong "implicates the merits of an ordinary preemption defense, which cannot support removal, the removal analysis begins with the second prong." *Id.* "[A] state cause of action may not be viable because it is preempted by a federal law—but only if federal law provides its own cause of action does the case raise a federal question that can be heard in federal court." *Id.*

**B**

Union Pacific argues that Section 10501 the ICCTA completely preempts Cultured's claim. Doc. 9 at 4. "The Interstate Commerce Act is among the most pervasive and comprehensive of federal regulatory schemes and has consequently presented recurring pre-emption questions from the time of its enactment." *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318 (1981). With the ICCTA, Congress further broadened the express preemption contained in the Interstate Commerce Act. *See Union Pac. R. Co. v. Chicago Transit Auth.*, 647 F.3d 675, 678 n.1 (7th Cir. 2011).

Section 10501 of the ICCTA reads in relevant part as follows:

> (b) The jurisdiction of the [Surface Transportation] Board over—
>
> (1) Transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

4

> is exclusive. Except as otherwise provided in this part, *the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.*

49 U.S.C. § 10501(b) (emphasis added).

Union Pacific argues that Cultured's claim is preempted because it seeks to regulate rail transportation. Doc. 1 at ¶ 19. That depends on an as-applied analysis that looks at whether Cultured's claim "would have the effect of preventing or unreasonably interfering with railroad transportation." *Norfolk S. Ry. Co. v. Dille Rd. Recycling, LLC*, 94 F.4th 517, 523–24 (6th Cir. 2024). Union Pacific argues that the analysis cuts in its favor because it could use the plot for various rail-related purposes. Doc. 1 at ¶ 19; Doc. 9 at 8.

Ultimately, the parties agree that Cultured's claim is preempted. Doc. 15 at ¶ 2. There appears to be good reason for that agreement: Cultured's claim is completely preempted because it seeks to regulate rail transportation by taking property from Union Pacific that Union Pacific could use for rail transportation. *See* Doc. 9 at 8 (noting that Union Pacific could use the plot to lengthen a rail spur). And, again, Cultured agrees with that position. Doc. 15 at ¶ 2.

Although the Tenth Circuit has not considered complete preemption in the context of the ICCTA, other jurisdictions have concluded that claims like Cultured's are preempted. For example, in *Skidmore v. Norfolk Southern Railway Company*, 1 F.4th 206 (4th Cir. 2021), the Fourth Circuit found a claim of adverse possession preempted because it sought to exclude a railroad from its land and would have the effect of regulating rail transportation. 1 F.4th at 215. And in *B & S Holdings, LLC v. BNSF Ry. Co.*, 889 F. Supp. 2d 1252 (E.D. Wash. 2012), the Eastern District of Washington reached a similar conclusion, noting that a claim of adverse possession was preempted because it would "interfere with railroad operations" and would "divest the railroad of

the very property with which it conducts its operations."[2] 889 F. Supp. 2d at 1258.

So, too, with the Surface Transportation Board. "As the agency authorized by Congress to administer the ICCTA, the STB is uniquely qualified to determine whether state law should be preempted by the ICCTA." *BNSF Ry. Co. v. Hiett*, 22 F.4th 1190, 1194 (10th Cir. 2022) (brackets omitted). The Board has concluded that adverse possession claims like Cultured's are completely preempted by the ICCTA. *Jie Ao & Xin Zhou—Petition for Declaratory Order*, No. FD 35539, 2012 WL 2047726, at *3 (S.T.B. June 4, 2012).

## C

Where, as here, "an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). Whether Cultured has stated a claim under the ICCTA depends on the elements of the cause of action under that statute. *See Suncor Energy*, 25 F.4th at 1256 (noting that complete preemption "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule"); *Skidmore*, 1 F.4th at 218 (noting that the district court must "convert" the plaintiff's claim into one arising under the ICCTA).

Union Pacific surmises that Cultured's claim, if it exists, likely arises under Section 11704 of the ICCTA. Doc. 9 at 9. That provision provides a private right of action in favor of a person or entity seeking "to enforce liability against a rail carrier providing transportation subject to the jurisdiction of the Board under this part." 49 U.S.C.

---

[2] *Union Pacific R. Co. v. Chicago Transit Auth.*, 647 F.3d 675 (7th Cir. 2011), is also instructive. There, the Seventh Circuit found that an attempt to condemn a railroad's land was preempted by the ICCTA, noting that "[e]ven if the property was not being used and Union Pacific had no immediate plans to use the property, a taking of this property would still prevent Union Pacific from using it for railroad transportation in the future." 647 F.3d at 681.

§ 11704(c).[3] The elements of such a claim are that the plaintiff suffered damages because of a rail carrier's violation of the ICCTA. *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 809 (5th Cir. 2011); *accord Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co.*, 215 F.3d 195, 202 (1st Cir. 2000).

Union Pacific argues that Cultured fails to state a claim under Section 11704. Doc. 9 at 11. It notes that Cultured has not alleged either of the elements of a claim under Section 11704—that Cultured suffered damages because of Union Pacific's violation of the ICCTA. *Id.*

Cultured's response is not helpful. As noted, Cultured agrees that its claim is preempted by the ICCTA, Doc. 15 at ¶ 2, but it makes no argument that it has stated a claim under that statute. Cultured does not engage with the elements of Section 11704. It neither concedes nor disputes that Section 11704 provides the relevant cause of action, and it does not explain how its claim is proper under Section 11704 or any other section of the ICCTA. *See generally id.* Cultured's main point is that Union Pacific's use of the plot is a "fact question," and that Union Pacific cannot and will not use the property in the future. *Id.* at ¶¶ 5, 7. Even if that were true, it is unclear why it would matter. *See Union Pacific*, 647 F.3d at 681 (finding that a claim would be completely preempted "[e]ven if the property was not being used and Union Pacific had no immediate plans to use the property").

It is not clear that Cultured has, can, or intends to state a claim under the ICCTA. Nevertheless, the state of affairs suggests that the proper course of action is to dismiss Cultured's Complaint without prejudice and allow Cultured time to file an amended complaint in which it can address and clarify whether its claim of adverse possession

---

[3] Union Pacific also posits that Section 10903 of the ICCTA provides a cause of action for "adverse abandonment," but it argues that Cultured has not stated a claim under that section. Doc. 9 at 11. Cultured does not contest this point. Doc. 15. And for good reason: Section 10903 does not create a private right of action. *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 857–59 (7th Cir. 2017). Rather, Section 10903 sets out that rail carriers must secure permission from the Surface Transportation Board to abandon a railroad line, *Phillips Co. v. Denver & Rio Grande W. R. Co.*, 97 F.3d 1375, 1376 (10th Cir. 1996), and it allows for review of the Board's abandonment decisions. *See, e.g.*, *Kulmer v. Surface Transp. Bd.*, 236 F.3d 1255, 1256 (10th Cir. 2001) (reviewing Board decision on an application for abandonment). Accordingly, whether Cultured has stated a claim for adverse abandonment under Section 10903 is not considered.

is cognizable under the ICCTA. *See* Doc. 15 at ¶ 8 (requesting leave to amend to state federal claims); *Skidmore*, 1 F.4th at 218 (noting that the district court may allow the plaintiff to "amend her complaint to clarify the scope of her Termination Act claims before revisiting [the defendant's] motion").

## III

For the foregoing reasons, Union Pacific's Motion to Dismiss, Doc. 8, is GRANTED. Cultured's Complaint is dismissed without prejudice. Cultured shall have until **June 1, 2026** in which to file an amended complaint.

It is so ordered.

Date: May 11, 2026                          s/ Toby Crouse
                                            Toby Crouse
                                            United States District Judge